**LAW OFFICE OF WOOD,**
**WANG & ASSOCIATES, PLLC**
Kevin S. Wang, Esq.
David J. Wood, Esq.
3370 Prince St, Suite 703,
Flushing, NY, 11354
Tel: 3478517989
kwang@operr.com
dwood@operr.com
*Attorney for Plaintiffs*
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

Tanling Tsao, Di Zhang, Joseph Kir, and Youxiu Zou
individually and on behalf of others similarly situated,

**Case No.** 25-1498

**COMPLAINT**
29 U.S.C. § 216(b) COLLECTIVE
ACTION & FED. R. CIV. P. 23
CLASS ACTION

*Plaintiffs,*

v.

Harvest Financial & Insurance Service LLC,
Harvest Financial Group,
Wealthtop Advisors Group,
Xuefeng Gao aka Ellen Gao,
Qijun Chen aka Jenny Chen,
Yuwu Liu aka Leo Liu,
and John and Jane Does 1-10

*Defendants.*
--------------------------------------------------------X

Plaintiffs Tanling Tsao, Di Zhang, Joseph Kir and Youxiu Zou (collectively "Plaintiffs"),

individually and on behalf of others similarly situated by and through their attorney, complain and

allege as follows against Defendants Harvest Financial & Insurance Service LLC, Harvest

Financial Group, Wealthtop Advisors Group, Xuefeng Gao aka Ellen Gao, Qijun Chen aka Jenny

Chen, Yuwu Liu aka Leo Liu, and John & Jane Does 1 through 10 (collectively "Defendants").

1

## SUMMARY OF CLAIMS

1. This is a class action brought by plaintiffs, insurance agents formerly employed by defendants for alleged violations of the Fair Labor Standards Act, (FLSA), 29 U.S.C. § 201 et seq. and New York Labor Law (NYLL), arising from Defendants' various willfully and unlawful employment policies, patterns and practices.

2. Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA by engaging in a pattern and practice including, but not limited to, not paying its employees including Plaintiffs, at least minimum wage for each hour worked with overtime compensation for all hours worked over forty (40) each workweek, and for having engaged in retaliation against employees' protected activities.

3. Plaintiffs further allege pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that they are entitled to recover from the Defendants: (1) unpaid wage compensations, (2) unpaid overtime compensation, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a pay stub, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) unlawful termination for loss salaries and punitive damages (7) 9% simple prejudgment interest provided by NYLL, (8) post judgment interest, and (9) attorney's fees and costs.

2

4. Defendants violated New York Labor Law § 193 by impermissibly deducting payments from the compensation of Plaintiffs and other class members in order to pay for overhead expenses of the defendants such as support staff, office space, telephone service, computer support and liability insurance, travel costs and any other costs or even profits for benefits to Defendants but borne by Plaintiffs

## JURISDICTION AND VENUE

5. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

7. Plaintiff Tanling Tsao, ("Tsao"), is and at all times material to this action was an individual residing in Queens, New York and was former employee of Defendants.

8. Plaintiff Di Zhang, ("Zhang"), is and at all times material to this action was an individual residing in Queens, New York and was a former employee of Defendants.

9. Plaintiff Joseph Kir, ("Kir"), is and at all times material to this action was an individual residing in Queens, New York and was a former employee of Defendants.

10. Plaintiff Youxiu Zou, ("Zou"), is and at all times material to this action was an individual residing in Queens, New York and was former employee of Defendants.

11. Defendant Harvest Financial & Insurance Service LLC ("HFIS"), is and at all times material to this action was a California limited liability company having its principal place of business

3

at 100 N. Citrus Street, Suite 610, West Covina, CA 91791 but at least conducts partial business in New York State.

12. Defendant Harvest Financial Group, ("HFG"), is and at all times material to this action was a California corporation having its principal place of business at 100 N. Citrus Street, Suite 610, West Covina, CA 91791 at least does its partial business in New York State.

13. Defendant Wealthtop Advisors Group, ("WAG"), is and at all times material to this action was a New York corporation having its principal place of business at 6131 217th Street, 2nd Floor, Oakland Gardens, NY 11364.

14. Upon information and belief, HFG and HFIS were located in the same location, were managed by the same groups of people and do the same or similar type of business.

15. Upon information and belief, WAG acts as an agent of HFIS and HFG in New York  to assist HFIS and HFG to manage all of the Plaintiffs and class members.

16. Defendant Xuefeng Gao, a.k.a. Ellen Gao, ("Gao"), is and at all times material to this action was an individual residing in the State of California.

17. Defendant Qijun Chen, a.k.a. Jenny Chen, ("Chen"), is and at all times material to this action and was an individual residing in the State of New York.

18. Defendant Yuwu Liu, a.k.a. Leo Liu ("Liu"), is and at all times material to this action was an individual residing in the State of New York.

19. Defendants John and Jane Does 1-10 are those individuals, partnerships, limited liability companies, corporations, or other entities, the true names of which are not known to Plaintiffs currently but should be liable and responsible for Plaintiffs' claims in this case. Plaintiffs, therefore, sue all those Defendants by fictitious names. Plaintiffs will seek leave of Court to insert the true names of said Defendants when they are ascertained. These fictitiously named

Defendants are liable and responsible in the same manner for the acts, occurrences, liabilities, and damages alleged herein as other named Defendants.

20. At all relevant times hereto (1) Defendant Gao was the CEO and Founder of HFIS and HFG; (2) Defendant Chen was the Vice President of HFG and HFIS and the owner of WAG; (3) Defendant Liu is the co-founder of WAG with Defendant Chen; (4) At least Defendants Gao, Defendant Chen, Defendant Liu with other unknown Defendants controlled and/or manage the business and affairs of HFIS, HFG at least partially though WAG as agent to manage Plaintiffs and class members.

21. Upon information and belief, all relevant times mentioned herein, the acts of the businesses involved were performed by an employee, agent, officer, servant, and/or representative of Defendants.

22. At all times relevant to this Complaint, Defendants, and each of them, were acting as agents, employees, and/or representatives of each other, and were acting within the course and scope of their agency, employment, and/or such other binding relationship with the full knowledge, consent, permission, authorization, and ratification, either express or implied, of each of the other Defendants in performing the acts alleged in this Complaint.

## **STATEMENT OF FACTS**

### *Plaintiff TANLING TSAO*

23. Plaintiff Tsao was recruited by Defendant Chen, who was a Vice President of Defendant HFG on January 20, 2022. Plaintiff Tsao was offered a Franchise Marketing Director position and her commission level was 85% of all of the received payment from the clients and later on she was promoted to a Vice President (VP) position with no less than the same commission level.

24. Plaintiff Tsao only received 50% commission but the remaining 35% was never paid from Defendants.

25. Defendant HFG required Plaintiff Tsao to attend weekly management meetings and Plaintiff Tsao was penalized for cash for absence and lateness.

26. Plaintiff Tsao performed administrative work for Defendants but never got paid, the work includes but not limited to multiple training sessions for agents of HFG, public workshops for Defendant HFG, met the potential clients of HFG, support the existing clients of HFG, any other administrative work without any salary and other compensations.

27. Plaintiff Tsao's pictures were used in multiple locations and events by Defendant HFG to promote Defendants' business. Plaintiff Tsao's picture is still on HFG's website as of filing this complaint. No compensation was paid to Plaintiff Tsao either for the picture used to promote HFG.

28. Defendants illegally deducted Plaintiff Tsao's commissions to pay for company expenses of HFG. Plaintiff Tsao asked Defendant Liu multiple times not to reduce her commissions for company expenses, Defendant Liu refused the requests. Defendant Liu never informed Plaintiff Tanling Tsao what expenses Tsao's commissions were paid for.

29. Defendant Liu deducted $15,410 from Plaintiff Tsao's commission for Hawaii Trip organized by Defendant HFG. The action was not agreed by Plaintiff Tsao and no invoice was given to Plaintiff Tsao

30. Defendant Liu deducted $1000 from Plaintiff Tsao's commission for the Christmas Party organized by Defendant HFG and WAG. The action was not agreed by Plaintiff Tsao and no invoice was given to Plaintiff Tsao

31. Defendant Liu deducted $200 from Plaintiff Tsao's commission for the Mid-Autumn Party organized by Defendant HFG and WAG. The action was not agreed by Plaintiff Tsao and no invoice was given to Plaintiff Tsao.

32. Defendant HFG and Defendant Chen, forced Plaintiff Tsao, and all Senior Marketing Directors levels to purchase tickets for the Convention held by Defendant HFG.

33. Defendant WAG gave Plaintiff Tsao a 1099 form for the amount of $40050 for calendar year 2022 and $104,324 for calendar year 2023. Plaintiff Tsao has never received such an amount from WAG and there is no contract between Plaintiff Tsao and WAG either.

34. Defendant HFG unilaterally changed Plaintiff Tsao's contract type Direct Pay Agent to Licensed Only Agent (LOA) without informing her. Under the LOA designation, commissions from insurance carriers were no longer paid directly to Plaintiff Tsao and were redirected to Defendant HFG which decided how and when to distribute the commission to Plaintiff Tsao. Additionally, this change meant that all of Plaintiff Tsao's clients were considered property of Defendant HFG instead of remaining her personal clients. For example, all clients Plaintiff Tsao had worked with at National Life Group, Corebridge Financial/AIG, and American National (ANICO) were now considered clients of Defendant HFG, rather than her own.

35. Through conversations with National Life Group and fellow agents, Plaintiff Tsao confirmed that she was not the only agent unaware of these changes by Defendant HFG. Many class members, including but not limited to Plaintiff Tsao, were not notified when Defendant HFG converted them from DPA to LOA Agents, which they were misclassified as independent contractors but actually they should be hourly employees under Defendants control and management.

36. During the employment with Defendants, Plaintiff Tsao was working 7 days with approximately 16 hours per day from around 7- 8 AM in the morning until midnight or even around 1 AM, working at least 112 hours per week with no meals break and no record of working time recorded by Defendants.

37. Plaintiff Tsao never received a pay rate notice and pay stubs, and there is no certain salary to be paid routinely weekly or biweekly except some uncertainty payments from commissions.

38. Plaintiff Tsao was terminated by Defendant HFG on February 13, 2024. The stated main reason for termination was Plaintiff Tsao's "dissatisfaction with HFG's policies and upper management" but Plaintiff Tsao had only raised concerns about why Defendant HFG repeatedly changed its compensation plans every year and reduced agent benefits without obtaining the required consent in advance.

39. Defendant HFG refused to issue Plaintiff Tsao a release letter, which prevented her from transferring her agency affiliation to another firm. This meant that due to Defendant HFG's refusal to issue a release letter, Plaintiff Tsao could not submit any new policies for National Life Group for six months even if she had any new clients. After HFG terminated Plaintiff Tsao but kept her book of business and commission distributed from insurance companies.

40. Plaintiff Tsao was terminated by HFG on February 13, 2024. Defendant Liu still asked Plaintiff Tsao to pay office rent to HFG in May 2024. Defendant Liu told Plaintiff Tsao that her commissions were all used to pay the company expenses of HFG and WAG.

41. Plaintiff Tsao was instructed to pay approximately $3,400 upfront to reserve a room for the company's trip, with the Defendant promising to reimburse her later. In compliance with this instruction, Plaintiff Tsao paid $3,400 in cash. Subsequently, the Defendant returned the amount in the form of a $3,400 check but also issued her a 1099 tax form. Despite initially

paying in cash, Plaintiff Tsao received a tax form, indicating a misrepresentation of the reimbursement as taxable income rather than a legitimate refund.

42. After Plaintiff Tsao was terminated by HFG, managers from HFG, including Defendant Liu and Defendant Chen who occupied Plaintiff Tsao's properties including office rooms, furniture, printers, chairs, file cabinets without Plaintiff Tsao's consent. Defendant Liu warned Plaintiff Tsao that she cannot enter HFG's office and the lock will be replaced.

43. Shortly thereafter, on or around February 13, 2024, Defendants delivered termination notices to Plaintiff Tsao via email. The stated reason for their dismissal was their expressed dissatisfaction with company policies and management, which Defendants allege had created irreconcilable differences and untenable grounds for their continued employment.

44. Upon termination. Defendant Liu informed Plaintiff Tsao that her commissions would be withheld by Defendants, specifically by Defendant WAG and used to pay rent for the office space at Defendant HFIS in New York. This was done despite Plaintiff Tsao's explicit refusal to consent to such an arrangement. Plaintiff Tsao had consistently objected to the withholding of her commissions for office expenses, arguing that it was a clear violation of the terms of her contracts and agreements with Defendants. Defendant Liu's unilateral decision to misappropriate her commissions without her consent not only flagrantly breached the contractual agreements but also unlawfully deprived Plaintiff Tsao of her rightful earnings, exacerbating her financial instability following her termination.

45. HFG unilaterally terminated Plaintiff Tsao when there is no fault from her and HFG unilaterally kept the clients in the Plaintiff's book of business to remain in HFG, which Plaintiff Tsao lost access to serve these clients and HFG did not follow up on the clients either, resulting

in the lapse of insurance for some of these clients. HFG deducted the commission from Plaintiff Tsao' other cases to compensate for the losses of the lapsed cases without her consent.

46. Defendant HFG withheld all of her commissions from February 13, 2024, effectively cutting off her income.

47. After receiving the termination letter, Plaintiff Tsao did not find a job receiving the competitive income when the lawsuit was filed.

*Plaintiff DI ZHANG*

48. Plaintiff Zhang's main duties included, but were not limited to, converting clients, selling life insurance, recruiting agents, creating PowerPoint presentations, and training agency members.

49. Plaintiff Zhang's employment started on June 9, 2022 at HFG as a regular agent without administrative work.

50. Plaintiff Zhang's employment was wrongfully terminated on February 13, 2024 for her having expressed concern that her commission rate was reduced without her consent.

51. Plaintiff Zhang worked approximately 80 hours per week throughout his employment with no meals break and no record of working time recorded by Defendants.

52. Plaintiff Zhang's workday typically started around 11:00 AM, with the ending time varying, often extending until midnight.

53. Plaintiff Zhang's commission was determined according to the agency's commission compensation structure.

54. Plaintiff Zhang initially started at a 50% contract level upon joining the agency on June 9, 2022.

55. After achieving $150,000 in Target Premium (TP), Plaintiff Zhang was promoted to Qualified Marketing Director, with an expected contract level increase to 75%, effective March 1, 2023.

Since then, Plaintiff Zhang performed administrative work for Defendants but never got paid. Even after she was promised about 75% of commission, Plaintiff only received 55%.

56. Plaintiff Zhang performs administrative work for Defendants including but not limited to the mandatory weekly management, training the agents or sales, participating in meetings to promote the business of Defendants, meeting potential clients to close deals, support the existing clients etc.

57. When starting as a regular agent, Plaintiff Zhang sold one policy client paid $7920 annually, she was supposed to receive 50% of the amount which multiplied by her contract level 50%, $1980. But when she received her paycheck from Defendant WAP which Plaintiff Zhang never signed any contract with.

58. Plaintiff Zhang attended Defendant HFG's personal achievement trip in 2023, and the Defendant told Plaintiff Zhang that she needed to pay the plug-in fee $200 and $150 before she achieved 75%.

59. However, Plaintiff Zhang only received 55% commission. Upon inquiry, the agency claimed that a New York resident policy discount applied, and the 75% contract level actually took effect on May 1, 2023.

60. Plaintiff Zhang served clients across multiple states, including Pennsylvania, necessitating travel to meet clients and sign/deliver paper contracts. All travel-related expenses, such as tolls, gas, and work supplies, were paid personally by Plaintiff Zhang.

61. In both 2022 and 2023, Plaintiff Zhang covered the full cost of attending the agency's annual conference, including tickets, lodging, and travel expenses.

62. Plaintiff Zhang was instructed to pay approximately $3,400 upfront to reserve a room for the company's trip, with the Defendant promising to reimburse her later. In compliance with this

instruction, Plaintiff Zhang paid $3,400 in cash. Subsequently, the Defendant returned the amount in the form of a $3,400 check but also issued her a 1099 tax form. Despite initially paying in cash, Plaintiff Zhang received a tax form, indicating a misrepresentation of the reimbursement as taxable income rather than a legitimate refund.

63. For the annual party, Plaintiff Zhang was forced to invite 20 people, covering the associated costs. Additionally, Plaintiff Zhang was required to purchase and distribute client gift sets, including thermal mugs and umbrellas, which was paid as personal expense.

64. Upon information and belief, on or about March 30, 2023, the Defendants unilaterally altered the contractual terms for agents, including Plaintiff Zhang, without prior notice or consent. Agents were shifted from direct pay status to "Licensed Only Agents" (LOA). This change significantly impacted Plaintiffs' commission structure, book of business which was controlled by Plaintiff Zhang to be controlled by Defendant HFG. Under the direct pay system, commissions were paid directly to agents by insurance companies. Under the new LOA system, commissions were instead redirected to the Defendant HFG, who then distributed payments to agents.

65. This modification contradicted the original contract terms and financially harmed Plaintiff Zhang by altering the method and timing of commission payments.

66. Defendant HFG used Plaintiff Zhang's personal image on their official company website for marketing purposes. This was done without compensation and continued even after Plaintiff Zhang 's termination.

67. Plaintiff Zhang never received a pay rate notice and pay stubs, there is no certain salary to be paid routinely weekly or monthly except some payment from commission.

68. After receiving the termination letter, Plaintiff Zhang did not find a job with competitive income when the lawsuit was filed.

### Plaintiff JOSEPH KIR A.K.A Joe Kir

69. Plaintiff Kir started as a Senior Manager with Defendant HFG on or around December 7, 2022.

70. Plaintiff Kir's daily work included, but was not limited to, having conferences to meet new potential clients, maintaining customer relationships, providing after sales support and conducting training for new agents, supporting Defendants HFG agents in sales, product training, compliance, and other business-related activities.

71. Plaintiff Kir engaged with prospects on social media platforms, including Instagram, WeChat, Facebook, and XiaoHongShu, and attended various networking events to acquire business for Defendants

72. Plaintiff Kir's employment was terminated on February 13, 2024.

73. Plaintiff Kir worked approximately 84 hours per week throughout his employment.

74. Plaintiff Kir's daily working hours typically were from 9:00 AM to 9:00 PM (12 hours per day) with no meals break and no record of working time recorded by Defendants.

75. Plaintiff Kir' commission payments were processed frequently incorrectly. There was no clear, public description of how commissions were calculated. The commission contract was changed multiple times within two years, significantly reducing Plaintiff Kir and other class members' commissions in favor of Defendants.

76. On December 28, 2022, Plaintiff Kir personally spent $200 for the Harvest Financial New Year Dinner as a marketing expense.

77. On May 20-21, 2023, Plaintiff Kir purchased a $99 ticket to attend the Harvest Financial Convention.

13

78. On December 23, 2023, Plaintiff Kir paid $1,650 ($1,000 for the event and $550 for gifts) for the Harvest Financial New Year Dinner and Gift Set, which was used for marketing purposes.

79. From January 11, 2024 to January 13, 2024, the Recruiting Trip to Defendant HFG Headquarters was hosted in West Covina, California. The purpose of this trip was to recruit an experienced agent, Jie Wu, who continued to generate sizable profits for Harvest Financial Group even after Plaintiff Joe Kir was wrongfully terminated.

80. Plaintiff Kir personally covered the following expenses for this trip:

- Airline Tickets: $1,200

- Airbnb: $300

- Car Rental: $200

- Gas: $50

81. Plaintiff Kir paid a total of $1,000 ($250 per month from May 2023 - August 2023) for office plugin fees while working in the office to support other agents' work and other business operations for benefit of Defendants.

82. Plaintiff Kir traveled from Flushing, NY, to Rockville, MD between November 25, 2023 and November 27, 2023 for business purposes, including sales meetings and recruiting appointments. During this trip, Plaintiff Kir personally covered all related expenses, including $500 for hotel accommodations, $100 for gas, and $80 for toll fees. The trip was necessary to meet potential clients and agents in person, furthering the business growth of Defendant HFG.

83. Plaintiff Kir traveled to Rockville, MD, from Flushing, NY, between December 30, 2023 and January 1, 2024, to attend additional sales meetings and recruiting new agents. Plaintiff Kir paid $500 for hotel accommodations, $100 for gas, and $80 for toll fees. These expenses were

directly related to expanding the company's sales network and fostering professional relationships with potential clients and agents.

84. Plaintiff Kir made a third business trip to Rockville, MD, from Flushing, NY, between February 4 and February 6, 2024, to engage in sales and recruiting potential new agents . Plaintiff Kir paid $100 for gas and $80 for toll fees. The trip was essential for maintaining ongoing business relationships and securing new clients and agents for Defendants.

85. Throughout these trips, Plaintiff Kir personally funded all travel-related expenses without any reimbursement from Defendants, despite these trips being undertaken for benefit of the Defendants' business growth.

86. Defendant HFG used Plaintiff Kir's personal image on their official company website for marketing purposes. This was done without compensation and continued even after Plaintiff Joe Kir's termination.

87. Plaintiff Kir was terminated without legitimate cause after his expressing concerns about contract changes during an online meeting with colleagues and Defendants' official Defendant Gao because the contract changes reduced agent commissions and favored Defendants, prompting Plaintiff Kir to question their fairness.

88. When Plaintiff Kir sought clarification regarding his termination, company representative Paul Saw responded: "[T]he company does not need any reason to terminate you if they want."

89. Plaintiff Kir never received a pay rate notice and pay stubs, there is no certain salary to be paid routinely weekly or monthly except some payment from commission.

90. After receiving the termination letter, Plaintiff Kir did not find a job with competitive income as working with Defendants when the lawsuit was filed.

***Plaintiff Youxiu Zou aka Maggie Zou***

91. Plaintiff Zou began her employment with Defendant HFG on May 20, 2022.

92. Plaintiff Zou worked as an insurance agent with Defendant HFG, where Plaintiff Zou was responsible for training a team of insurance agents, ensuring that they were equipped to sell life insurance independently, Plaintiff Zou actively recruited new agents for Defendants. Plaintiff Zou also took on marketing to promote Defendants' business, using recruitment efforts as a means to promote the Defendants' business.

93. Plaintiff Zou was terminated from Defendant HFG on February 13, 2024.

94. Plaintiff Zou worked an average of 85 hours per week throughout her employment, with some weeks exceeding this amount due to holiday events that required attendance to expand her market, both in terms of clients and agents.

95. Plaintiff Zou's regular working hours were typically from 10:30 AM to 11:30 PM daily without meals break because while she was in lunch or dinner break, she is still in working for Defendants and there is no record of working time recorded by Defendants.

96. Between May 20, 2022, and February 28, 2023, Plaintiff Zou's contract level for commission was 70%.

97. From March 1, 2023, to February 13, 2024, Plaintiff Zou's contract level for commission was 75%.

98. The Defendants made misrepresentations during the recruitment process, failing to substain the initial promises regarding commission rates and direct contracts with insurance carriers, including Plaintiff Zou.

99. Despite being assured a stable commission structure, the commission system was altered three times, ultimately reducing the amount of commission Plaintiff Zou was supposed to receive.

100. The Defendants forcibly required agents, including Plaintiff Zou, to purchase tables and gifts for company conventions and holiday events. These expenses were directly deducted from her commission without prior consent from Plaintiff Zou.

101. Additionally, the Defendants deducted commissions from Plaintiff Zou to cover company parties and official expenses such as plug-ins, which is for benefit of Defendants.

102. In or around 2023, the Defendants unilaterally altered the contractual terms with agents, including Plaintiff Zou, by shifting them from a direct pay status to Licensed Only Agent (LOA) status. This change was implemented without prior notice or consent and significantly impacted Plaintiff Zou's commission structure.

103. Under the direct pay system, insurance companies paid commissions directly to agents. However, under the new LOA system, commissions were redirected to the Defendants, who then distributed them to agents. This change not only delayed commission payments but also it changes the book of business from the fact that it was controlled by Plaintiff Zou to

104. Plaintiff Zou covered various expenses that were the Defendants' responsibility, incurring significant financial losses as a result.

105. From September 2022 to January 2024, Plaintiff Zou paid $3,450 for the Office Plugin Fee, which should have been covered by the Defendants.

106. On December 28, 2022, and December 23, 2023, Plaintiff Zou personally paid $3,330 for the Defendants New Year Party Dinner, despite this being a company-sponsored event.

107. Additionally, Plaintiff Zou incurred approximately $9,000 in other company-related expenses. These included, but were not limited to, business travel, various office dinners, and outdoor activities organized by the Defendants, which should have been covered by the Defendants.

17

108.    Plaintiff Zhang never received a pay rate notice and pay stubs, there is no certain salary to be paid routinely weekly or monthly except some payment from commission.

91. After receiving the termination letter, Plaintiff Zou did not find a job with competitive income as working with Defendants if her entitled payment were fully paid when the lawsuit was filed.

## COLLECTIVE ACTION ALLEGATIONS

109.    Plaintiff brings this action both individually and as a class representative on behalf of all current and former non-exempt employees who have been employed by Defendants within the past six (6) years up to filing the complaint in this case (the "Collective Action Period"). This action seeks to represent all individuals who were not compensated for all hours worked by minimum wage and were not paid one and one-half times for such rate to hours working beyond forty (40) per week, (the "Collective Action Members"); This action also seeks to represent any and all of agents whose commissions or salaries were unlawfully deducted and seek to refund any payment or fund that Defendants should pay but unfairly were paid by Plaintiffs and other class members; This action further seeks to represent any and all of insurance agents who were wrongfully terminated for their protected activities under FLSA and NYLL and were entitled to damages and compensations against Defendants.

110.    The individual Plaintiffs successfully recruited more than 100 agents to Defendants who were treated similarly by Defendants as agents with different designating roles in or around 2022-2024. Each of these agents was led to believe they would receive similar benefits and opportunities as those promised to individual Plaintiffs by Defendants.

111.    Prior to and after the Defendants unilaterally altered the commission payment structure, Defendants repeatedly issued commission payments in a manner inconsistent with promises

initially made to agents. When commission payments were issued, Defendants frequently paid incorrect amounts that contradicted initial assurances provided to the agents.

112.    Defendants intentionally made these commission payments in opaque ways, making it difficult for agents to identify the incorrect or inappropriate amounts paid. Additionally, when commissions were actually paid, payments were consistently delayed, often arriving significantly later than expected. Moreover, commission amounts consistently fell short of the promised amounts which were unlawfully deducted, resulting in substantial financial losses to individual Plaintiffs and other class members.

113.    Upon termination, Defendants ceased all commission payments owed, including compensation Defendants owed Plaintiffs for previous unmet shortfalls. Per industry standards, and the agreements between Plaintiffs and Defendants, Defendants were required to continuously pay commissions to Plaintiffs for the life of the insurance policies sold by Plaintiffs and other agents. To date, Plaintiffs have not received the full commission payments owed since termination. These owed commissions in addition to other payment or expense/cost that were supposed to be refunded to Plaintiffs and other class members were not paid in full to these individual Plaintiffs and other similarly situated agents.

114.    Defendants misclassified individual Plaintiffs and other similar situated agents when they wrongfully chose to treat them as exempt from the protection of these laws. Plaintiff's primary duty was to service Defendants' business and advise current and prospective clients on various insurance and/or financial products, taking into account their knowledge of the needs, goals and risk tolerance of each client, as well as their knowledge of and experience with the insurance industry and market, before making any sales of such products. plaintiff does not fall within the "outside sales" exemption to the federal and state labor laws. Nor do Plaintiffs fall

19

within any of the administrative, professional or executive exemptions, because Defendants did not pay plaintiffs and other class members on any kind of guaranteed basis salary.

## CLASS ACTION ALLEGATIONS

115.    Plaintiffs bring their claims under FLSA and NYLL pursuant to 29 U.S.C. § 216(b) collective action and Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") on behalf of all non-exempt employees who were employed by Defendants on or after the date that is six years prior to the filing of this Complaint (the "Class Period").

116.    All such individuals, including Plaintiff, are collectively referred to as the "Class."

117.    The members of the Class are readily identifiable. Their number and identities can be determined from Defendants' records, which contain information regarding hours worked, positions held, and rates of pay for each Class member. For purposes of providing notice and other procedural matters in this action, the names and addresses of Class members are available from Defendants, and notice can be effectuated through methods permitted under the Fed. R. Civ. P. 23.

*Numerosity*

118.    The proposed Class is so numerous that joining all members would be impracticable, and resolving their claims as a class action will serve the interests of both the parties and the Court. While the exact number of Class members is currently unknown and remains within the exclusive control of Defendants, upon information and belief, the Class consists of more than forty (40) individuals.

*Commonality*

20

119. There are common questions of law and fact that predominate over any individual inquiries, making class treatment appropriate. These common questions include, but are not limited to:

   a. Whether Defendants employed Plaintiff and the Class as employee within the meaning of New York law;

   b. Whether Plaintiff and Class members were not compensated for all hours worked;

   c. Whether Plaintiffs and Class members were entitled to, and properly paid, overtime wages under the New York Labor Law;

   d. Whether Defendants engaged in a policy, pattern, and/or practice of failing to pay individual Plaintiffs and other similar situated and the Rule 23 Class spread-of-hours compensation as required by the NYLL;

   e. Whether Defendants maintained a policy, pattern, and/or practice of denying Plaintiff and the Rule 23 Class the requisite statutory meal periods;

   f. Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the commencement of employment and/or in a timely manner thereafter;

   g. Whether Defendants issued pay stubs that accurately detailed rates of pay and credits applied toward the minimum wage for Plaintiffs and the Rule 23 Class on each payday; and

   h. The common rate or rates, subject to a uniform method of calculation, that Defendants were and are required to pay Class members for their work.

   *Typicality*

120. Plaintiff's claims are representative of those that could be asserted by any member of the Class, and the relief sought is consistent with what each Class member would pursue in individual actions. All Class members were subject to Defendants' uniform corporate

practices, including the failure to pay minimum wage and overtime compensation, as well as retaliation against employees for participating in or engaging in protected activities, as alleged herein. Defendants' company-wide policies and practices impacted all Class members in a similar manner, allowing Defendants to benefit from the same unfair and unlawful actions. As a result, Plaintiff and other Class members suffered comparable losses, injuries, and damages stemming from these unlawful policies, practices, and procedures.

*Adequacy*

121.    Plaintiff is fully capable of fairly and adequately protecting the interests of the Class and has no conflicting interests that would be antagonistic to those of the Class. Plaintiffs are represented by attorneys who are experienced and competent in handling both class action litigation and wage-and-hour employment disputes, ensuring effective representation and advocacy for the Class.

*Superiority*

122.    A class action is the most suitable and efficient method for adjudicating this dispute, particularly in the context of wage-and-hour litigation, where individual Class members often lack the financial resources to pursue claims against corporate defendants. Class certification will allow numerous similarly situated individuals to collectively assert their claims in a single proceeding, promoting judicial efficiency while avoiding the unnecessary duplication of efforts and costs associated with multiple individual lawsuits.

123.    Given that the financial losses, injuries, and damages suffered by each Class member are relatively small in comparison to the expenses required for individual litigation, it would be impractical, if not impossible, for individual Class members to seek legal redress on their own. Addressing these claims as a class action serves the public interest by conserving judicial resources and ensuring a uniform resolution of the legal issues at hand. Allowing separate

actions to proceed individually would not only burden the court system but also create a risk of inconsistent rulings, potentially leading to conflicting standards of conduct for Defendants. Moreover, such an approach could impair the rights of Class members who are not parties to those separate actions. The claims in this case can be effectively resolved through common, class-wide proof, and if necessary, the Court has the authority to implement procedures to efficiently manage this action as a class proceeding.

124. Based on information and belief, Defendants and other employers across the state are in violation of the New York Labor Law. Current employees frequently hesitate to assert their rights because of the fear of direct or indirect retaliation. Former employees, meanwhile, are reluctant to file claims, worried that doing so could negatively impact their current or future employment opportunities. Class actions offer a degree of anonymity for class members not named in the complaint, enabling them to assert their rights while minimizing or eliminating these risks.

## CAUSE OF ACTIONS

### FIRST CLAIM FOR RELIEF
**[Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage]**

125. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

126. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs in full, and the similarly situated collective action members, for some or all of the hours they worked.

127. The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

23

128. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## SECOND CLAIM FOR RELIEF
### [Violation of New York Labor Law—Failure to Pay Minimum Wage]

129. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

130. At all relevant times, Plaintiffs are employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

131. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs, in full for some or all of the hours they worked.

132. Defendants knowingly, willfully, and maliciously violated Plaintiff's rights by failing to pay him minimum wages in the lawful amount for hours worked.

133. An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 et seq., §§ 650 et seq., and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## THIRD CLAIM FOR RELIEF
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime]

134. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

135. The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives

24

compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

136.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages.

137.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

138.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

139.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

140.    Defendants willfully and maliciously failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

141.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have

25

known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

### FOURTH CLAIM FOR RELIEF
[Violation of New York Labor Law—Failure to Pay Overtime

142.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

143.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under the NY Wage Theft Prevention Act, and interest.

144.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiffs and the class are entitled to.

145.    Defendants' failure to pay Plaintiffs their overtime pay violated the NYLL.

146.    Defendants' failure to pay Plaintiffs was not in good faith.

### FIFTH CLAIM FOR RELIEF
[Violation of New York Labor Law—Spread of Hour Payment]

147.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

148.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, et seq., and §§ 650, et seq., and New York State Department of Labor regulations § 146-1.6.

149.    All Plaintiffs worked more than 10 hours every working day which they are entitled to receive at least 1-hour extra payment for spread of hours.

150. Defendants failed to pay Plaintiffs spread-of-hours pay.

## SIXTH CLAIM FOR RELIEF

### [Violation of New York Labor Law—Failure to Provide Wage Notice]

151. Plaintiffs reassert and incorporate by reference all preceding paragraphs as if fully set forth herein.

152. The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL §195-1(a).

153. Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

154. Defendants not only did not provide notice to each employee at the Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

155. Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## SEVENTH CLAIM FOR RELIEF

27

**[Violation of New York Labor Law—Failure to Provide Wage Statements]**

156.    Plaintiffs reassert and incorporate by reference all preceding paragraphs as if fully set forth herein.

157.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

158.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff' payday.

159.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## EIGHTH CLAIM FOR RELIEF

**[Violation of New York Labor Law—UNLAWFULLY DEDUCTED SALARY]**

160.    Plaintiffs reassert and incorporate by reference all preceding paragraphs as if fully set forth herein.

161.    The NYLL and supporting regulations prohibit employers from deducting any salary from employees from any salary under N.Y. Lab. Law §§ 663, 193, and 198(1–a).

162.    Defendants have acted in bad faith not to comply with the New York Labor Law with respect to deduct payment or costs from the Plaintiffs' salaries and Plaintiffs are entitled to get refunded.

## NINTH CLAIM FOR RELIEF

**[VIOLATION OF SECTION 215(A)(3) OF THE FLSA**

**RETALIATION FOR PROTECTED ACTIVITIES]**

28

163. Plaintiffs reassert and incorporate by reference all preceding paragraphs as if fully set forth herein.

164. The anti-retaliation provision of Fair Labor Standards Act (FLSA) provides, in part, that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter" 29 U.S.C. § 215(a)(3).

165. Plaintiffs have been subjected to adverse employment actions, including, termination, denial of paying owed wages, and dissemination of false accusations to their customers to tarnish their reputation and obstruct their current employment "because of" their engagement in protected participation by enforcing their rights under the FLSA and filing a lawsuit against Defendants for failure to compensate them for all hours worked and for unpaid overtime.

166. Retaliation has been a "motivating" factor in the adverse employment decisions made against Plaintiffs.

167. The Defendants were employers within the meaning of the FLSA, because "employer" as defined by Section 203(d) of the FLSA includes "any person acting directly or indirectly in the interest of an employer in relation to an employee" and Defendants were self-consciously acting in the interests of the Association's employer members to protect them from meritorious lawsuits.

168. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional amount as liquidated damages."

**TENTH CLAIM FOR RELIEF**

**[VIOLATION OF SECTION 215.1(A)(III) OF THE NYLL— RETALIATION]**

169. Plaintiffs reassert and incorporate by reference all preceding paragraphs as if fully set forth herein.

170. Section 215.1(a)(iii) of the NYLL provides that "[n]o employer or his agent, or the officer or agent of any corporation, partnership or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee… because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter."

171. Plaintiffs have been subjected to adverse employment actions, including, termination, denial of paying owed wages, and dissemination of false accusations to their customers to tarnish their reputation and obstruct making living "because of" their engagement in protected participation by enforcing their rights under the NYLL and filing a lawsuit against Defendants for failure to compensate them for all hours worked and for unpaid overtime.

172. Section 215.2(a) of the NYLL provides that "[t]he court shall have jurisdiction to restrain violations of this section, within two years after such violation, regardless of the dates of employment of the employee, and to order all appropriate relief, including enjoining the conduct of any person or employer; ordering payment of liquidated damages, costs and reasonable attorneys' fees to the employee by the person or entity in violation…. Liquidated damages shall be calculated as an amount not more than twenty thousand dollars."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment providing the following relief:

30

A. A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

B. An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs plus compensatory and liquidated damages in the amount of one hundred percent (100%) thereafter under NY Wage Theft Prevention Act as a result of Defendants' knowingly, willfully, and maliciously failed to pay wages;

C. Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

D. Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

E. An award of actual damages and liquidated and/or punitive damages as a result of Defendants' willful and malicious failure to "spread of hours" premium pursuant to New York Labor Law;

F. An award of back pay to Plaintiffs equal to the pay they would have earned between the time of their termination and the time for each Plaintiff until each of them finds a new job that makes the competitive wages;

G. An award of liquidated damages to Plaintiffs equal to their back pays;

H. An award of punitive damages for Defendants' willful retaliation against Plaintiffs;

I. Imposition of a constructive trust upon the assets of the defendants to the extent of the sums due to plaintiff and to members of the class;

31

J.  Providing that if any amounts remain unpaid upon the expiration of ninety-days following the issuance of judgment, or ninety days after expiration of the time to appeal, and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4);

K.  An order requiring defendants to provide an accounting of all wages, commissions and any other costs or expenses unlawfully charged back and withheld from compensation or commission due to plaintiffs and the other members of the class;

L.  Restitution and disgorgement of profits obtained through Defendants' unfair and fraudulent business practices against Plaintiffs;

M.  Prejudgment interest;

N.  An award of costs and expenses of this action together with reasonable attorneys' fees and other costs pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

O.  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Dated: March 18, 2025
Queens, New York

*Respectfully Submitted*

**LAW OFFICE OF WOOD,
WANG & ASSOCIATES, PLLC**
*/s/Kevin S. Wang*
Kevin S. Wang, Esq.
David J. Wood, Esq.
3370 Prince St Ste 703
Flushing, NY, 11354
Tel: 3478517989
kwang@operr.com
dwood@operr.com

32

*Attorney for Plaintiffs, the proposed FLSA*
*Collective, and Potential Rule 23 Class*

### NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR SERVICES RENDERED

TO: HARVEST FINANCIAL & INSURANCE SERVICE LLC, HARVEST FINANCIAL GROUP, WEALTHTOP ADVISORS GROUP, XUEFENG GAO AKA ELLEN GAO, QIJUN CHEN AKA JENNY CHEN, YUWU LIU AKA LEO LIU, AND JOHN & JANE DOES 1-10

---

**PLEASE TAKE NOTICE,** in accordance with Section 630 of the New York Business Corporation Law and Section 609 of the New York Limited Liability Company Law, Plaintiffs TANLING TSAO, DI ZHANG, JOSEPH KIR, YOUXIU ZOU and others similarly situated intend to hold you personally liable, jointly and severally, as one of the ten largest shareholders and/or members of:

HARVEST FINANCIAL & INSURANCE SERVICE LLC;
HARVEST FINANCIAL GROUP;
WEALTHTOP ADVISORS GROUP

for all unpaid debts, wages, and/or salaries owed to them as laborers, servants, and/or employees of the company for services they rendered within the past six (6) years. Plaintiff and those similarly situated have expressly authorized the undersigned, as their legal representative, to pursue this claim on their behalf.

Dated: March 18, 2025
Queens, New York

**LAW OFFICE OF WOOD,**
**WANG & ASSOCIATES, PLLC**
*/s/Kevin S. Wang*
Kevin S. Wang, Esq.
David J. Wood, Esq.
3370 Prince St Ste 703
Flushing, NY, 11354
Tel: 3478517989
kwang@operr.com

*dwood@operr.com*
*Attorney for Plaintiffs, the proposed FLSA*
*Collective, and Potential Rule 23 Class*

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW**

TO: HARVEST FINANCIAL & INSURANCE SERVICE LLC, HARVEST FINANCIAL GROUP, WEALTHTOP ADVISORS GROUP, XUEFENG GAO AKA ELLEN GAO, QIJUN CHEN AKA JENNY CHEN, YUWU LIU AKA LEO LIU, AND JOHN & JANE DOES 1-10

---

**PLEASE BE ADVISED** that Plaintiffs TANLING TSAO, DI ZHANG, JOSEPH KIR, YOUXIU ZOU, along with others similarly situated as employees of the above corporations, intends to demand payment of unpaid debts, wages, and/or salaries owed to them as laborers, servants, and/or employees of the above corporations for services rendered within the past six (6) years. This demand is made pursuant to Section 630 of the New York Business Corporation Law and Section 609 of the New York Limited Liability Company Law and seeks payment from the ten largest shareholders of the above corporations. Plaintiff and those similarly situated have expressly authorized the undersigned, as their attorney, to pursue this demand on their behalf.

**DEMAND IS HEREBY MADE** for the right to inspect, either personally or through an agent or attorney, the minutes of shareholder proceedings and records of shareholders of the above corporations during regular business hours. Plaintiff further demands the right to make extracts from these records no sooner than five (5) days from the receipt of this notice.

Dated: March 18, 2025
Queens, New York

**LAW OFFICE OF WOOD,
WANG & ASSOCIATES, PLLC**

*/s/Kevin S. Wang*
Kevin S. Wang, Esq.
David J.Wang, Esq.
3370 Prince St Ste 703
Flushing, NY, 11354
Tel: 3478517989
kwang@operr.com
*dwood@operr.com*
*Attorney for Plaintiffs, the proposed FLSA*
*Collective, and Potential Rule 23 Class*

34

**LAW OFFICE OF WOOD,**
**WANG & ASSOCIATES, PLLC**
Kevin S. Wang, Esq.
David J. Wood, Esq.
3370 Prince St Ste 703
Flushing, NY, 11354
Tel: 3478517989
kwang@operr.com
dwood@operr.com
*Attorney for Plaintiffs*
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**---------------------------------------------------------X**

Tanling Tsao, Di Zhang, Joseph Kir, and Youxiu Zou.
individually and on behalf of others similarly situated,          **Case No.**

              *Plaintiffs,*                                        <u>**CONSENT TO SUE**</u>

v.
Harvest Financial & Insurance Service LLC,
Harvest Financial Group,
Wealthtop Advisors Group,
Xuefeng Gao aka Ellen Gao,
Qijun Chen aka Jenny Chen,
Yuwu Liu aka Leo Liu,
and John and Jane Does 1-10

              *Defendants.*
**---------------------------------------------------------X**

By signing below, I authorize the filing and prosecution of the Fair Labor Standards Act (FLSA) action referenced above pursuant to Section 216(b) of the FLSA. I agree to serve as a representative for others similarly situated and to make decisions on my behalf, as well as on behalf of those similarly situated, regarding the litigation, including its conduct, strategy, and all other matters related to this lawsuit.


_____                    _____
Print Name                                        Sign Name


_____                    _____
Address                                           Apartment/Suite


_____                    _____
City, State, ZIP Code                             Telephone


35

_____            _____
Email Address                                Date

## DOCUMENT PRESERVATION DEMAND

Plaintiff(s) hereby demand that Defendant take all necessary steps to preserve any and all recordings, data, documents, and other tangible materials related to Plaintiff, the events described herein, and any third party connected to any telephone call, campaign, account, sale, or file associated with Plaintiff. This includes any records linked to Plaintiff's account, number, or identifying symbol. These materials are highly relevant to the litigation of this claim.

If Defendant is aware of any third party in possession, custody, or control of such materials, Plaintiff demands that Defendant request that the third party also preserve these materials. This demand does not limit or reduce Defendant's independent duty to preserve relevant documents and evidence.

*/s/Kevin S. Wang*
Kevin S. Wang, Esq.
David J. Wood, Esq.
3370 Prince St Ste 703
Flushing, NY, 11354
Tel: 3478517989
kwang@operr.com
dwood@operr.com

36

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we assert a lien on any recovery in this matter for ONE THIRD (1/3) of the total recovery or such other amount as the court may award. All rights concerning attorney's fees have been assigned to counsel.

*/s/Kevin S. Wang*
Kevin S. Wang, Esq.
David J. Wood, Esq.
3370 Prince St Ste 703
Flushing, NY, 11354
Tel: 3478517989
kwang@operr.com
dwood@operr.com